UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                    Plaintiff,

                                                         Civil Action No. 18 cv 848

             -against-

H&H DISTRIBUTORS, AMJED HATU, SHAREEF          **COMPLAINT**
HASSAN, MUSSA HAMZA, AKRAM SHAMAKH and
ANWAR ALSAIDI,

                                    Defendants.

-------------------------------------------------------------------- x

        Plaintiff the City of New York (the "City"), by its counsel, Zachary W. Carter,

Corporation Counsel of the City of New York, respectfully alleges, with knowledge of its own

actions and on information and belief as to the actions of others, as follows:

### Nature of the Action

        1.      This is an action for injunctive relief, damages and penalties arising out of

the defendants' trafficking of "untaxed" cigarettes[1] into New York City by an association of

individuals referred to for purposes of this complaint as the "Moflehi Enterprise."[2] The Moflehi

Enterprise consisted of approximately more than 21 members who operated in New York, New

Jersey, North Carolina and Virginia. Many members of the Enterprise have been indicted by the

Office of the Bronx District Attorney on a variety of felony charges, including money-

laundering, tax law violations and enterprise corruption.

---

[1] As explained more fully below, "untaxed" cigarettes are those on which State and City excise taxes should have
been, but are not, pre-paid because the cigarettes are trafficked into the City by evading the cigarette distribution
system mandated by law.

[2] As used in this complaint, the term "enterprise" refers solely to an entity defined by 18 U.S.C. § 1961(4) and should
not be understood to refer to an enterprise as defined under any other state or federal statute.

2.      The Moflehi Enterprise has been engaged since at least some time in 2015 and likely far longer, in the distribution and sale of massive quantities of untaxed cigarettes, with a resultant tax loss to New York City and State of at least $25 million.

3.      The $58.50 per carton cigarette excise tax that must be paid on legal New York cigarettes sales gives rise to a higher market price for cigarettes in New York City than in North Carolina, where the cigarette tax is $4.50 per carton. The defendants reap an enormous but illegal competitive advantage by acquiring far cheaper North Carolina-taxed cigarettes and selling them into New York, where the cigarettes are sold at less than the market price but well above the North Carolina purchase price. The scheme is not of recent vintage. *See United States v. Di Maria*, 727 F.2d 265 (2d Cir. 1984) ("'Bootleg cigarettes' are those purchased in a low-tax state, *e.g.*, North Carolina, and then transported to a high-tax state, *e.g.*, New York.").

4.      The principal of the Enterprise, Shareef Moflehi, with others, traded in untaxed cigarettes and forged tax stamps throughout the City, supplying cigarettes to bodegas in Queens, Brooklyn and Manhattan, Rochester and Buffalo, New York, and Westchester County.  The Moflehi Enterprise also supplied smaller distributors in New York which in turn supplied additional bodegas in the City.

5.      The Moflehi Enterprise purchased their North Carolina-taxed cigarettes from several North Carolina-based cigarette distributors and retailers, each of whom was an associate of the Enterprise. The principal intermediary between the Moflehi Enterprise and the North Carolina sources was Ammar Shamakh. Shamakh employed drivers Abdulwahed Salim and Maeen Alsayidi to transport cigarettes from North Carolina to the Bronx. ("Ammar Shamakh, Abdulwahed Salim and Maeen Alsayidi are collectively referred to as "Transporters").

6.      Defendant H&H Distributors is a wholesale cigarette distributor located in the State of North Carolina. Amjed Hatu, and Shareef Hassan are the principals of H&H Distributors (hereafter, H&H Distributors, Hatu and Hassan are referred to collectively as the "H&H Defendants"). The H&H Defendants were the principal suppliers of cigarettes to the Moflehi Enterprise.

7.      Mussa Hamza, Akram Shamakh and Anwar Alsaidi (hereafter referred to collectively as the "North Carolina Retailers") deal in cigarettes from convenience stores located in the State of North Carolina, where the excise tax they pay on legally-acquired cigarettes is $4.50 per carton. The North Carolina Retailers were the principal conduit by which cigarettes from the H&H Defendants were transferred to the Transporters for transport to New York.

8.      The Moflehi Enterprise purchased as much as $250,000-$500,000 of untaxed cigarettes a week from the H&H Defendants and North Carolina Retailers, transporting enormous quantities of untaxed cigarettes into New York City (the "City"), thereby taking illegal advantage of the higher New York price created by the inclusion of New York's higher tax in the retail sales price of cigarettes.

9.      The sale, shipment, distribution and/or transport into the City of cigarettes that do not bear the New York State and City tax stamps as evidence of the payment of New York taxes violates the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.* ("CCTA"), and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").[3]

---

[3] Cigarettes possessed for sale or use in New York City must be affixed with New York State and New York City excise tax stamps, the purchase of which serves as the pre-payment of State and City cigarette excise taxes. Cigarettes found in New York that do not bear New York tax stamps are "contraband" cigarettes within the meaning of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*, regardless of whether the cigarettes bear a tax stamp of another jurisdiction.

10.     In failing to file with State and City tax administrators reports detailing their cigarette sales into New York, defendants' delivery of cigarettes into New York State, whether or not affixed with tax stamps, violates the Jenkins Act, 15 U.S.C. § 375 *et seq.*, (as amended by the Prevent All Cigarette Trafficking Act of 2010) (collectively, the "PACT Act"). Defendants separately violate the PACT Act by delivering cigarettes into New York without complying with all State and City regulations governing the distribution of cigarettes, including but not limited to laws requiring that tax stamps be affixed to all cigarettes possessed for sale.

11.     The delivery of cigarettes into the City, whether or not affixed with tax stamps, to persons not lawfully operating tobacco businesses, also violates New York Public Health Law §1399-ll ("PHL 1399-ll").

12.     The conduct described above causes injury to both the public health and the fiscal interests of New York State and New York City, entitling the City to an order; i) enjoining the defendants from shipping, distributing or transporting "untaxed" cigarettes into New York City and State in violation of the CCTA and RICO; (ii); enjoining the defendants from shipping, distributing or transporting "untaxed" cigarettes into New York City and State in violation of the PACT Act; (iii) enjoining defendants from shipping cigarettes to persons not lawfully operating tobacco businesses in the City and State in violation of NY PHL § 1399-*ll*; (iv) awarding the City money in the amount of the City taxes evaded, including treble damages; (v) awarding civil penalties under the CCTA, PACT Act and NY PHL § 1399-*ll* and (vi) awarding attorney's fees as provided for under the RICO statute.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 378, 18 U.S.C. § 1964, 18 U.S.C. § 2346 (b)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

14.     Venue is proper in this district under 18 U.S.C. § 1965(a) and (b) and 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PARTIES

15.     The City is a municipal corporation organized under the laws of the State of New York.

16.     Defendant H&H Distributors ("H&H") is a corporation formed under the laws of North Carolina in 2007, with a principal place of business at 2747 Business Park Drive, Rocky Mount, North Carolina, 27804. H&H is engaged in the wholesale distribution of cigarettes and other tobacco products, among other business activities.

17.     Defendant Amjed Hatu ("Hatu") is a resident of the State of North Carolina and an owner of H&H.

18.     Defendant Shareef Hassan ("Hassan") is a resident of the State of North Carolina and an owner of H&H.

19.     Defendant Mussa Hamza ("Hamza") is a resident of the State of North Carolina and is an owner or employee of A&K Express, 301 Grantham Street, Goldsboro, NC, and Fast Trip, 600 Williams Street, Goldsboro, NC, and other convenience stores that sell cigarettes.

20.     Defendant Akram Shamakh ("Akram") is a resident of the State of North Carolina and is an owner or employee of A&K Express, 301 Grantham Street, Goldsboro, NC, and other convenience stores that sell cigarettes.

21.     Defendant Anwar Alsaidi ("Alsaidi") is a resident of the State of North Carolina and is an owner or employee of A&K Express, 301 Grantham Street, Goldsboro, NC, Fast Trip, 600 Williams Street, Goldsboro, NC, and Hanshali Food Mart, 518 Elm Street, Goldsboro, NC, and other convenience stores that sell cigarettes.

## BACKGROUND

22.     Cigarette smoking is a deadly and costly public health problem. Smoking causes a host of crippling and deadly diseases, including cardiovascular disease, coronary heart disease, emphysema, and a wide range of cancers. *Report on the Global Tobacco Epidemic* 8 (WHO 2008 Reports).[4] Tobacco-related illnesses annually kill approximately 440,000 people in the United States. Centers for Disease Control and Prevention ("CDC"), *Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses--United States, 2000-2004* (2008);[5] Statement of Vice Admiral Richard H. Carmona, U.S. Surgeon General, reprinted at 155 *Cong. Rec.* S6000 (June 3, 2009). Tobacco kills more people than AIDS, alcohol, drug abuse, car accidents, murders, suicides, and fires combined.

23.     Tobacco use gives rise to substantial burdens on health care costs. Tobacco-related disease and death costs $193 billion a year in health-care spending and lost productivity. *CDC, Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses—United States, 2000-2004*, supra. Annual costs for the Medicaid and Medicare programs

---

[4] *Available at* http://www.who.int/tobacco/mpower/en/.

[5] *Available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5745a3.htm.

attributable to smoking-related illnesses have been estimated to be $30 billion (in 2006) and $14.2 billion (in 1993) respectively. *CDC, Sustaining State Programs for Tobacco Control: Data Highlights 2006*, at 17 (Medicaid);[6] Xiulan Zhang et al., *Cost of Smoking to the Medicare Program*, 1993, 20 *Health Care Financing Rev.* No. 4 at 183 (1999) (Medicare).[7]

24.     The public-health and economic costs resulting from tobacco use compel all levels of government to regulate stringently the sale and use of tobacco, and in particular to impose high costs on tobacco use through taxation. New York City and State for example impose a high tax on cigarettes because "[i]t is well established that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco." Inst. of Med., *Ending the Tobacco Problem: A Blueprint for the Nation* 80, 182 (2007); Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010)[8] (noting that "increases in the price of cigarettes through excise taxes […] are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit").

25.     A ten-percent increase in the price of cigarettes is estimated to reduce cigarette demand among adults by three to five percent.  Frank J. Chaloupka & Rosalie Liccardo Pecula, *The Impact of Price on Youth Tobacco Use*, National Cancer Institute Monograph No. 14, at 194

---

[6] *Available at* http://www.cdc.gov/tobacco/data_statistics/state_data/data_highlights/2006/pdfs/dataHighlights06rev.pdf.

[7] *Available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/Research/HealthCareFinancingReview/downloads/99summerpg179.pdf.

[8] *Available at* http://www.surgeongeneral.gov/library/tobaccosmoke/report/chapter9.pdf.

(Nov. 2001).[9]  The response by young people to price increases is still greater; a ten-percent increase in cigarette prices is estimated to reduce the number of youth smokers by at least six or seven percent. *See Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, Serial No. 110-47, at 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaigning for Tobacco-Free Kids)[10]; "Tax hike cuts tobacco consumption," *USA Today*, September 11, 2012 ("A giant federal tobacco tax hike has spurred a historic drop in smoking, especially among teens, poor people and those dependent on government health insurance").[11]

26.     The availability of cigarettes at a purchase price that has been reduced below the prevailing market price as a result of the non-payment of taxes owed on the cigarettes undercuts the beneficial effect of high cigarette prices, so that "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]" Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654.[12]  The relationship between cigarette prices and public health is sufficiently close that the rate of infant mortality in a particular jurisdiction haven found to be affected by the price of cigarettes available in that jurisdiction, so much so that researchers have stated that "Federal and state

---

[9] *Available at* http://cancercontrol.cancer.govTCRB/ monographs/14/m14_12.pdf.

[10] *Available at* http://judiciary.house.gov/hearings/hear_050108.html.

[11] *Available at* http://www.usatoday.com/news/nation/story/2012-09-10/cigarette-tax-smoking/57737774/1

[12] *Available at* http://www.cdc.gov/tobacco/data_statistics/sgr/2010/index.htm. ("Untaxed" cigarettes are those in which the tax owed on the cigarettes has not been paid.  Untaxed cigarettes may be profitably sold at lower prices because the seller did not incur the cost of taxes.

policymakers may consider increases in cigarette taxes as a primary prevention strategy for infant mortality."[13]

27.     The New York State cigarette tax is imposed principally by *New York Tax Law* §§ 471 and 471-a: "There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale," (*N.Y. Tax L.* § 471) or on all cigarettes "used" in the State.  *N.Y. §471-a*)[14]. The tax imposed is presently $4.35 per 20-cigarette pack. N.Y. Tax L. § 471(1).  New York City's separate tax of $1.50 per 20-cigarette pack is imposed on all cigarettes possessed by any person for sale or use in the City. *See Administrative Code of the City of New York* ("Ad. Code") §§ 11-1302(a)(1), (2). All cigarettes within the State and City are presumptively subject to tax unless the contrary is established by the person claiming to be exempt.  *N.Y. Tax L.* § 471(1); *Ad. Code* § 11-1302(d).

28.     New York State and City law require that a tax stamp be affixed to cigarette packages to evidence payment of the taxes imposed pursuant to the Tax Law and Administrative Code. *N.Y. Tax L.* §§ 471, 473; *Ad. Code* §§ 11-1302, 1304.

29.     New York State and City license entities known as "stamping agents," who pre-pay State and City cigarette taxes by purchasing tax stamps from the State and City, with the cost of each stamp essentially equal to the amount of the tax on a pack of cigarettes. Agents must affix the stamps to the cigarette packs that the agents sell to cigarette retailers, and must by law incorporate an amount equal to the amount of the tax into the price of the cigarettes sold to retailers.  Retailers in turn must include the amount of the tax in the price of subsequent sales of the cigarettes, so that the tax burden is passed along to subsequent purchasers in the distribution

---

[13] http://pediatrics.aappublications.org/content/137/1/e20152901#F2.

[14] "Use is defined as "the exercise of any right or power actual or constructive and shall include but is not limited to the receipt, storage or any keeping or retention for any length of time, but shall not include possession for sale." NY Tax L. § 471-a

chain, usually the consumer of the cigarettes. *N.Y. Tax L.* §§ 471, 473 and *Ad. Code* § 11-1302(a)(3), (e) and (h).

30.     Stamping agents are the only entities lawfully permitted to purchase and affix State and City tax stamps to cigarettes and the only entities lawfully permitted to import cigarettes not affixed with tax stamps into the City and State.

31.     None of the members of the Moflehi Enterprise are New York-licensed stamping agents, or otherwise licensed to deal in cigarettes in New York State or City.

32.     Cigarettes not affixed with a New York State tax stamp or combined New York State-New York City tax stamp are referred to herein as "untaxed" cigarettes because the tax owed on the cigarettes has not been paid by purchase of the applicable tax stamps.

33.     New York State and City cigarette taxes combine to form the highest cigarette tax in the nation, making New York City a lucrative market for illegal sales of untaxed cigarettes.

## ACTIONS OF THE DEFENDANTS

34.     The Moflehi Enterprise is an organized criminal enterprise headed by defendant Shareef Moflehi, headquartered in Bronx County, New York. The Moflehi Enterprise has engaged in the sale and distribution of untaxed cigarettes by purchasing cigarettes, principally in North Carolina, and distributing them in Bronx County, Westchester County, and elsewhere in New York State, generating millions of dollars in illicit profits.

35.     Moflehi and other Enterprise members received untaxed cigarettes at various locations in Bronx County and elsewhere in New York State, storing the cigarettes at those locations, and transporting them to locations throughout the City and elsewhere for subsequent sale by Enterprise members and others.

36. The Moflehi Enterprise also acquired counterfeit New York tax stamps, affixing the stamps to cigarette packages to conceal the fact that taxes had not been paid on the cigarettes.

37. H&H is a wholesale tobacco distributor located at 2747 Business Park Drive, Rocky Mount, North Carolina, 27804. H&H is owned and operated by Defendants Amjed Hatu and Shareef Hassan. (The term "H&H Defendants" refers collectively to H&H, Hatu and Hassan).

38. The H&H Defendants made legal purchases of cigarettes from cigarette manufacturers and other distributors and re-sold cigarettes to, *inter alia*, cigarette retailers located in North Carolina.

39. Defendants Mussa Hamza, Akram Shamakh and Anwar Alsaidi each purchased cigarettes at wholesale from the H&H Defendants, and, *inter alia*, sold some of the cigarettes in ordinary retail sales in their respective convenience stores located in North Carolina. (Mussa Hamza, Akram Shamakh and Anwar Alsaidi are referred to collectively as the North Carolina Retailers.")

40. The H&H Defendants and the North Carolina Retailers are members of the Moflehi Enterprise.

41. The H&H Defendants participated in the operation of the Moflehi Enterprise by selling cigarettes from H&H's inventory of tax-paid North Carolina cigarettes to the North Carolina Retailers. The H&H Defendants made those sales to the North Carolina Retailers with full knowledge that the North Carolina Retailers intended to and did in fact transfer the cigarettes to the Moflehi Enterprise for distribution and sale in New York City.

42. The North Carolina Retailers (Mussa Hamza, Akram Shamakh and Anwar Alsaidi) participated in the operation of the Moflehi Enterprise by using their stores as "fronts,"

placing orders with the H&H Defendants for cigarettes supposedly to be sold in North Carolina, but which cigarettes in fact were routinely transferred to the Moflehi Enterprise.

43.     Certain members of the Moflehi Enterprise participated in the operation of the Enterprise as "Transporters." Transporters received cigarette orders from various buyers in New York, including other members of the Moflehi Enterprise, and placed the orders with the North Carolina Retailers.  The Transporters then picked-up cigarettes from the North Carolina Retailers for transport by motor vehicle to New York.  Transporters included, but were not limited to:

   a.  Maeen Alsayidi, who obtained supplies of non-New York stamped cigarettes from the North Carolina Retailers and transported the cigarettes into New York City, where the cigarettes were delivered to other members or to customers of the Moflehi Enterprise.

   b.  Abdulwahed Salim a/k/a Amigo, who obtained supplies of non-New York stamped cigarettes from the North Carolina Retailers and transported the cigarettes into New York City, where the cigarettes were delivered to other members or to customers of the Moflehi Enterprise.

   c.  Ammar M. Shamakh, who obtained supplies of non-New York stamped cigarettes from the North Carolina Retailers and transported the cigarettes into New York City, where the cigarettes were delivered to other members or to customers of the Moflehi Enterprise.

44.     The Moflehi Enterprise typically imported untaxed cigarettes into New York by having a member of the Enterprise (or some other New York cigarette buyer) transmit an order for a variety of cigarette brands and styles to a Transporter member of the Moflehi Enterprise. The Transporter then sent the order to a North Carolina Retailer. The North Carolina Retailer then transmitted the order to one of the H&H Defendants. The H&H Defendants then had the cigarettes delivered to the North Carolina Retailers. The Retailers in turn transferred the cigarettes, usually to the Transporter who made the order, who then delivered the cigarettes to the Moflehi Enterprise in New York.

45.     The integrated operation of the Enterprise is evidenced by the flow of orders that began in New York, went via text message to a Transporter, who in turn texted the orders to a North Carolina Retailer, who in turn texted the order to the H&H Defendants.

46.     The integrated operations of the Moflehi Enterprise is depicted below by SMS text messages intercepted by the New York City Police Department ("NYPD") pursuant to court-authorized eavesdropping, the orders among the various Enterprise members in some instances remained identical as they were relayed from buyer to transporter to North Carolina Retailer to the H&H Defendants; in other instances the orders showed small differences in the quantities or brands ordered.

47.     One such set of orders, dated January 8-9, 2017, is reflected in a series of intercepted text messages consisting of an apparent list of various brands and styles of cigarettes originating from a New York-based unidentified male known to investigators as "U/M 1." The list was sent by U/M 1 via text message to Transporter Ammar Shamakh, from Shamakh via text to North Carolina Retailer Mussa Hamza, and from Hamza via text to H&H Defendant Amjed Hatu :

   a.   On January 8, 2017, at 21:50-21:51 hours, four text messages were sent by U/M 1 to Transporter Ammar Shamakh, listing an assortment of cigarettes of various brands, quantities and styles, including "Capri," "Dunhill" "Carlton," each of which is a recognized cigarette brand name.

| SMS Text: [1/4] .5 capri pink. 5 capri pink 120. 5 capri blue. 5 capri blue 100. 5 capri green. 5 luky. 10 caml no filtr. 5 palmal no filtr. 5 carlton 120 soft. 10 mirt b |
| --- |
| SMS Text: [2/4] .lue 100 bx. 5 mirt ultr menth 100 . 5 now menth 100. 5 dunhil red. 15 amricn yelow. 10 amricn ornge. 5 amricn gold. 10 amricn trquise. 5 palmal blue 100 |
| SMS Text: [3/4] .bx. 5 mavrk lat 100. 90 palment. 45 palment 100. 20 palment ultr. 5 winston. 5 salm. 5 salm lat. 5 salm ultr. 5 salm slim. 120 mal lat. 15 mal lat 100. 9 |
| SMS Text: [4/4] .0 mal. 15 mal 100. 40 mal ultr . 15 mal 27. 5 mal mdum. 5 mal mdum 100. 5 mal ultr menth. 10 mal menth. 5 mal soft. 5 mal black. 20 np lat. 210 long. |

b. Shortly thereafter, on January 8, 2017 at 22:53 hours, Transporter Ammar Shamakh sent four texts to North Carolina Retailer Mussa Hamza. The texts contained essentially an identical list of cigarettes brands, styles and quantities of cigarettes that Shamakh had received from U/M 1. The two sets of messages are identical, even in their misspellings (*e.g.*, "5 luky"), suggesting the texts were simply forwarded by Shamakh to Hamza.

SMS Text: [1/4] .5 capri pink. 5 capri pink 120. 5 capri blue. 5 capri blue 100. 5 capri green. 5 luky. 10 caml no filtr. 5 palmal no filtr. 5 carlton 120 soft. 10 mirt b

SMS Text: [2/4] .lue 100 bx. 5 mirt ultr menth 100 . 5 now menth 100. 5 dunhil red. 15 amricn yelow. 10 amricn ornge. 5 amricn gold. 10 amricn trquise. 5 palmal blue 100

SMS Text: [3/4] .bx. 5 mavrk lat 100. 90 palment. 45 palment 100. 20 palment ultr. 5 winston. 5 salm. 5 salm lat. 5 salm ultr. 5 salm slim. 120 mal lat. 15 mal lat 100. 9

SMS Text: [4/4] .0 mal. 15 mal 100. 40 mal ultr . 15 mal 27. 5 mal mdum. 5 mal mdum 100. 5 mal ultr menth. 10 mal menth. 5 mal soft. 5 mal black. 20 np lat. 210 long.

c. On January 9, 2017, at 8:04 hours, Mussa Hamza sent four texts to H&H owner Amjed Hatu containing the list of brands and styles originally sent from U/M 1 to Ammar Shamakh, with some minor changes in the number of particular brands and styles ordered:

SMS Text: [1/4] .5 capri pink. .5 capri pink 120. .5 capri blue. .5 capri blue 100. .5 capri green. .5 luky. .10 caml no filtr. .5 palmal no filtr. .5 carlton 120 soft. .

SMS Text: [2/4] .10 mirt blue 100 bx. .5 mirt ultr menth 100 . .5 now menth 100. .5 dunhil red. .15 amricn yelow. .10 amricn ornge. .5 amricn gold. .10 amricn trquise. .5

SMS Text: [3/4] . mavrk lat 100. .90 palment. .45 palment 100. .20 palment ultr. .5 salm. .5 salm lat. .5 salm ultr. .5 salm slim. .120 mal lat. .15 mal lat 100. .90 mal.

SMS Text: [4/4] .15 mal 100. .40 mal ultr . .15 mal 27. .5 mal mdum. .5 mal mdum 100. .5 mal ultr menth. .10 mal menth. .5 mal soft. .20 np lat. .150 long

48.     A second set of transactions is illustrated in a series of texts dated January 10 to 11, 2017, relaying a list of brands and styles. The texts originate with Enterprise principal Shareef Moflehi and were sent to Transporter Ammar Shamakh, who sent them to North Carolina Retailer Musa Hamza, who in turn sent them to H&H Owner Amjed Hatu:

d. On January 10, 2017 at 23:42 hours, Shareef Muflehi sent a series of three texts to Ammar Shamakh ordering various brands of cigarettes including Newport, Salem and "Mar[lboro] Men[thol] Light."

> **SMS Text:** [1/3] .690 short.1350 long .30 Newport lights .5 Newport blue .60 white 100.75 red 100.20 mar men light.15 mar menthol .15 kook blue.25 Salem light 100.5 Salem

> **SMS Text:** [2/3] .100.5 Salem silver.5 kook soft.5 kool box.5 Winston 100.35 American yellow .30 American blue .10 American turquoise .10 American orange .10 American gree

> **SMS Text:** [3/3] .n .15 mar silver.15 mar silver 100.150 red.90 white .BAGS

    e.   On January 11, 2017, at 01:14 hours Transporter Ammar Shamakh sent the identical order in a series of three texts to North Carolina Retailer Musa Hamza.

> **SMS Text:** [1/3] .690 short.1350 long .30 Newport lights .5 Newport blue .60 white 100.75 red 100.20 mar men light.15 mar menthol .15 kook blue.25 Salem light 100.5 Salem

> **SMS Text:** [2/3] .100.5 Salem silver.5 kook soft.5 kool box.5 Winston 100.35 American yellow .30 American blue .10 American turquoise .10 American orange .10 American gree

> **SMS Text:** [3/3] .n .15 mar silver.15 mar silver 100.150 red.90 white .BAGS

    f.   On January 11, 2017, at 7:05 hours, Retailer Musa Hamza texted H&H Defendant Hatu with the same list, compressed into two texts, and omitting the request for "BAGS" first sent by Moflehi.

> **SMS Text:** [1/2] .690 short.1350 long .30 Newport lights .5 Newport blue .60 white 100.75 red 100.20 mar men light.15 mar menthol .25 Salem light 100.5 Salem 100.5 Salem's

> **SMS Text:** [2/2] .ilver.35 American yellow .30 American blue .10 American turquoise .10 American orange .10 American green .150 red.90 whit

49.    A third sequence of transactions on January 16, 2017 illustrates apparent cigarette orders by three different New York City based entities that were relayed to the H&H Defendants:

    a.   On January 16, 2017, at 00:32 hours, Transporter Ammar Shamakh received a series of four texts from U/M 1.

> **SMS Text:** [1/4] .10 benson hagen menth bx. 10 capri porbo (viold), 5 capri blue. 5 palmal no filtr. 10 true blue soft. 10 true blue bx. 5 carlton 120 soft. 5 mirt blue 10

> **SMS Text:** [2/4] .0 bx.  5 vrgna slim lat bx. 5 palmal blue 100 bx. 5 misty pink. 5 mavrk menth lat 100. 45 palment. 15 palment 100. 5 palment ultr. 20 amricn yelow. 5 amr

> **SMS Text:** [3/4] .icn ornge. 120 mal lat. 30 mal lat 100. 90 mal. 15 mai 100. 15 mai ultr. 5 mal sliver menth. 10 mal sliver menth 100. 10 mal menth lat. 5 mal menth. 5 ma

> **SMS Text:** [4/4] .l 27. 10 caml crsh. 5 caml filtr. 5 caml sliver menth. 420 long. 150 smal try to bring what u can 5 off long and smal

b.  On January 16, 2017, at 00:34 hours, Transporter Ammar Shamakh forwarded four texts to North Carolina Retailer Mussa Hamza containing essentially the same sequence of cigarette brands and styles that Shamakh had just received from U/M 1 (¶50 a).

SMS Text: [1/4] .10 benson hagen menth bx. 10 capri porbo (viold), 5 capri blue. 5 palmal no filtr. 10 true blue soft. 10 true blue bx. 5 carlton 120 soft. 5 mirt blue 10

SMS Text: [2/4] .0 bx.  5 vrgna slim lat bx. 5 palmal blue 100 bx. 5 misty pink. 5 mavrk menth lat 100. 45 palment. 15 palment 100. 5 palment ultr. 20 amricn yelow. 5 amr

SMS Text: [3/4] .icn omge. 120 mal lat. 30 mal lat 100. 90 mal. 15 mal 100. 15 mal ultr. 5 mal sliver menth. 10 mal sliver menth 100. 10 mal menth lat. 5 mal menth. 5 ma

SMS Text: [4/4] .l 27. 10 caml crsh. 5 caml filtr. 5 caml sliver menth. 420 long. 150 smal

c.  At 7:54, North Carolina Retailer Mussa Hamza sent four texts to H&H owner Amjed Hatu containing the U/M 1 Order placed earlier that day with Ammar Shamakh.

SMS Text: [1/4] .10 benson hagen menth bx. .10 capri porbo (viold), .5 capri blue. .5 palmal no filtr. .10 true blue soft. .10 true blue bx. .5 carlton 120 soft. .5 mirt

SMS Text: [2/4] .blue 100 bx. .5 vrgna slim lat bx. .5 palmal blue 100 bx. .5 misty pink. 5 mavrk menth lat 100. .45 palment. .15 palment 100. .5 palment ultr. .20 amric

SMS Text: [3/4] .n yelow. .5 amricn omge. .120 mal lat. .30 mal lat 100. .90 mal. .15 mal 100. .15 mal ultr. .5 mal sliver menth. .10 mal sliver menth 100. 5 mal menth.

SMS Text: [4/4] .l 27. 10 caml crsh. 5 caml filtr. 5 caml sliver menth. 420 long. 150 smal

d.  Also on January 16, 2017, between 2:22 and 2:28 hours, Ammar Shamakh received a series of six texts from Shareef Moflehi

SMS Text: [1/6] .3 mar 72 silver.5 kool soft .7 kool 100.5 Salem silver .5 Salem light .5 Salem .5 Winston .3 Winston 100.15 camel blue .3 camel Turkish gold.25 mar men l

SMS Text: [2/6] .ight .10 mar 27.5 mar medium .5 mar special red.5 mar special gold .3 mar special gold 100.3 mar soft .5 basic blue .5 mar men 100.5 mar men light 100.40

SMS Text: [3/6] . mar silver.30 red 100.60 white 100.270 red.180 white .5 USA red 100.5 USA gold light .3 USA gold light 100.3 pall mall blue 100.3 pall mall green 100.5

SMS Text: [4/6] .Newport red 100.5 fortuna green 100.3 fortuna red 100.5 maverick gold 100.10 maverick red 100.5 merit gold.10 chesterfield non filter.10 Kent 100.5 Virgi

SMS Text: [5/6] .nia men .3 Virginia gold .3 Virginia men silver.5 parliament men silver .30 parliament 100.60 parliament .15 American yellow .25 American blue .3 America

SMS Text: [6/6] .n dark green .3 American gold .2 American black .2 American green .30 Newport light .20 Newport light 100.210 short .1200 lon

e.  At 3:04 hours, Ammar Shamakh sent as a series of 6 texts to North Carolina Retailer Akram Shamakh the order that had been placed earlier that day by Shareef Moflehi.

SMS Text: [1/6] .3 mar 72 silver.5 kool soft .7 kool 100.5 Salem silver .5 Salem light .5 Salem .5 Winston .3 Winston 100.15 camel blue .3 camel Turkish gold.25 mar men l

SMS Text: [2/6] .ight .10 mar 27.5 mar medium .5 mar special red.5 mar special gold .3 mar special gold 100.3 mar soft .5 basic blue .5 mar men 100.5 mar men light 100.40

SMS Text: [3/6] . mar silver.30 red 100.60 white 100.270 red.180 white .5 USA red 100.5 USA gold light .3 USA gold light 100.3 pall mall blue 100.3 pall mall green 100.5

SMS Text: [4/6] .Newport red 100.5 fortuna green 100.3 fortuna red 100.5 maverick gold 100.10 maverick red 100.5 merit gold.10 chesterfield non filter.10 Kent 100.5 Virgi

SMS Text: [5/6] .nia men .3 Virginia gold .3 Virginia men silver.5 parliament men silver .30 parliament 100.60 parliament .15 American yellow .25 American blue .3 America

SMS Text: [6/6] .n dark green .3 American gold .2 American black .2 American green .30 Newport light .20 Newport light 100.210 short .1050 lon

f.  Also on January 16, 2017, at 3:00 hours, Ammar Shamakh received an order consisting of three texts from Bashar Ali ("Bashar Ali Order").

SMS Text: [1/3] .480np100.180 np.30 np lt 100.150 mlt.120 red .45 mlt 100.45 red 100.75 slv .10 slv 100.30 menthol lt .10menthol.10 menthol 100.15 medium .15 no 27.5 wins

SMS Text: [2/3] .ton lt .2 vs red 120.10 pall mall red .5 carlton  100.5 capri pink 120.5 cap blue .5 cap purple.5 kent 100 sft.10 yellow.5 as dark blue .5 benson deluxe

SMS Text: [3/3] .menthol.90 plt .60 plt 100.

g.  On January 16, 2017, at 3:06, Ammar Shamakh sent as a series of three texts to North Carolina Retailer, Mussa Hamza, the order that had been placed with Ammar Shamakh moments before by Bashar Ali (¶50 f).

SMS Text: [1/3] .480np100.180 np.30 np lt 100.150 mlt.120 red .45 mlt 100.45 red 100.75 slv .10 slv 100.30 menthol lt .10menthol.10 menthol 100.15 medium .15 no 27.5 wins

SMS Text: [2/3] .ton lt .2 vs red 120.10 pall mall red .5 carlton  100.5 capri pink 120.5 cap blue .5 cap purple.5 kent 100 sft.10 yellow.5 as dark blue .5 benson deluxe

SMS Text: [3/3] .menthol.90 plt .60 plt 100.

h. At 7:51 hours North Carolina Retailer Mussa Hamza sent as two texts to H&H owner Amjed Hatu containing the Bashar Ali Order that Mussa Hamza had received earlier from Ammar Shamakh (¶¶50 f, g).

| SMS Text: [1/2] .250 np100.30 np lt 100.60 mlt.30 mlt 100.30 red 100.60 slv .10menthol.10 menthol 100.15 medium .15 no 27.2 vs red 120.5 carlton  100.5 capri pink 120.5 c |
| SMS Text: [2/2] .ap blue .5 cap purple.5 kent 100 sft.10 yellow.5 as dark blue .5 benson deluxe menthol.90 plt .60 plt 100 |

50.     A fourth set of transactions is illustrated by the following sequence of orders from Enterprise principal Shareef Moflehi to Transporter Ammar Shamakh to North Carolina Retailer Musa Hamza, and finally to Amjed Hatu at H&H Distributors.

a. On January 20, 2017 at 12:10 hours, Shareef Moflehi, the principal of the Moflehi Enterprise, sent a text containing various cigarette brand names and styles to Transporter Ammar Shamakh.

| SMS Text: [1/3] .1500 long .690 short .30 Newport light 100.45 Newport light .30 parliament 100.30 parliament .25 parliament men light .5 Newport red 100.270 white .180 r |
| SMS Text: [2/3] .ed .90 white 100.30 silver .30 silver 100.45 red 100.45 mar men light .20 camel blue .15 mar 27.10 mar men light 100.10 mar medium .5 mar men 100.15 kool |
| SMS Text: [3/3] . 100.20 kool .5 crush men .30 American yellow .5 American blue .10 maverick red 100.5 more green 120.5 dunhill re |

b. On January 20, 2017, at 14:02 hours, Transporter Ammar Shamakh texted North Carolina Retailer Mussa Hamza with the identical list that Shareef Moflehi had sent Ammar Shamakh approximately two hours previously, apparently by simply forwarding Moflehi's texts.

| SMS Text: [1/3] .1500 long .690 short .30 Newport light 100.45 Newport light .30 parliament 100.30 parliament .25 parliament men light .5 Newport red 100.270 white .180 r |
| SMS Text: [2/3] .ed .90 white 100.30 silver .30 silver 100.45 red 100.45 mar men light .20 camel blue .15 mar 27.10 mar men light 100.10 mar medium .5 mar men 100.15 kool |
| SMS Text: [3/3] . 100.20 kool .5 crush men .30 American yellow .5 American blue .10 maverick red 100.5 more green 120.5 dunhill re |

c. On January 20, 2017, at 14:02 hours, North Carolina Retailer Mussa Hamza spoke by telephone to defendant Shareef Hassan, a co-owner of H&H, stating that Hamza has just received Ammar Shamakh's order and discussing arrangement's to fill the order.

    d.  On January 20, 2017 at 14:15 hours North Carolina Retailer Mussa Hamza texted substantially the same list (¶¶ 51 a-c), with some modifications, to H&H owner Shareef Hassan.

| |
|---|
| **SMS Text:** [1/3] .1200 long .500 short .30 Newport light 100.45 Newport light .30 parliament 100.30 parliament .25 parliament men light .5 Newport red 100.150 white .60 re |
| **SMS Text:** [2/3] .d .90 white 100.30 silver .30 silver 100.45 red 100.45 mar men light .20 camel blue .15 mar 27.10 mar men light 100.10 mar medium .5 mar men 100.5 crush |
| **SMS Text:** [3/3] .men .30 American yellow .5 American blue .5 more green 120.5 dunhill re |

    e.  On January 23, 2017 at 22:40 hours, an unidentified male on Transporter Ammar Shamakh's telephone line had a conversation with Shareef Moflehi stating that they should be arriving by 01:00-01:30 hours to deliver.  Shareef Moflehi then called an Enterprise associate to tell him that the order is arriving at that time.

51.    A fifth sequence illustrates the transmission of orders from a New York City buyer, Enterprise principal Shareef Moflehi, via a North Carolina Retailer, to the H&H Defendants:

    a.  On January 24, 2017 at 03:14 hours, Shareef Moflehi, principal of the Moflehi Enterprise, placed an order via text message with Transporter Ammar Shamakh.

| |
|---|
| **SMS Text:** [1/7] .270 white .150 red.45 silver .60 whit 100.40 red 100.15 silver 100.5 mar men 100.10 mar men light .15 mar 27.10 mar medium .3  mar smooth.3 smooth 100.5 |
| **SMS Text:** [2/7] .mar soft .3 mar black.3 mar black 100.3 mart black men 100.5 Salem .5 Salem light.10 kool 100.5 kool .15 camel blue.5 camel filter .10 camel crush .30 Am |
| **SMS Text:** [3/7] .erican yellow .15 American blue .5 American dark blue .3 American orange .3 American dark green .120 parliament .30 parliament 100.5 parliament silver .5 |
| **SMS Text:** [4/7] . parliament men silver .5 parliament men light .5 Sonoma light green box.3 pall mall red 100.3 pall mall blue 100.3 L M blue 100.5 maverick red 100.3 for |
| **SMS Text:** [5/7] .tuna red 100.3 fortuna green 100.3 misty blue 120.3 Virginia silver.3 Virginia gold.3 Virginia men gold.5 Virginia gold 120.3 Kent 100.5 dunhill red.5 me |
| **SMS Text:** [6/7] .rit blue .3 merit bronze .10 Capri pink .2 Capri green .3 Capri blue .5 lucky strike.5 camel non filter .3 benson premium .3 Newport red .30 Newport ligh |
| **SMS Text:** [7/7] .t .15 Newport light 100.270 short.1200 long .Me..Nothing extr |

    b.  On January 24, 2017, at 03:19 hours Transporter Ammar Shamakh forwarded a list of cigarette brands and styles virtually identical to that received from Shareef Moflehi (¶52 a) to North Carolina Mussa Hamza.

SMS Text: [1/7] .270 white .150 red.45 silver .60 whit 100.40 red 100.15 silver 100.5 mar men 100.10 mar men light .15 mar 27.10 mar medium .3 mar smooth.3 smooth 100.5

SMS Text: [2/7] .mar soft .3 mar black.3 mar black 100.3 mart black men 100.5 Salem .5 Salem light.10 kool 100.5 kool .15 camel blue.5 camel filter .10 camel crush .30 Am

SMS Text: [3/7] .erican yellow .15 American blue .5 American dark blue .3 American orange .3 American dark green .120 parliament .30 parliament 100.5 parliament silver .5

SMS Text: [4/7] . parliament men silver .5 parliament men light .5 Sonoma light green box.3 pall mall red 100.3 pall mall blue 100.3 L M blue 100.5 maverick red 100.3 for

SMS Text: [5/7] .tuna red 100.3 fortuna green 100.3 misty blue 120.3 Virginia silver.3 Virginia gold.3 Virginia men gold.5 Virginia gold 120.3 Kent 100.5 dunhill red.5 me

SMS Text: [6/7] .rit blue .3 merit bronze .10 Capri pink .2 Capri green .3 Capri blue .5 lucky strike.5 camel non filter .3 benson premium .3 Newport red .30 Newport ligh

SMS Text: [7/7] .t .15 Newport light 100.270 short.1200 long .Me..Nothing extr

    c.    On January 25, 2017 at 08:14 hours, North Carolina Retailer Musa Hamza texted a virtually identical order of brands and styles (¶¶ 52 a, b) to defendant Amjed Hatu, an H&H owner.

SMS Text: [1/6] .270 white .150 red.45 silver .60 whit 100.40 red 100.15 silver 100.5 mar men 100.10 mar men light .15 mar 27.10 mar medium .3 mar smooth.3 smooth 100.5

SMS Text: [2/6] .mar soft .3 mart black men 100.5 Salem .5 Salem light.15 camel blue.5 camel filter .10 camel crush .30 American yellow .15 American blue .5 American dark

SMS Text: [3/6] . blue .3 American orange .3 American dark green .120 parliament .30 parliament 100.5 parliament silver .5 parliament men silver .5 parliament men light .

SMS Text: [4/6] .5 Sonoma light green box.5 maverick red 100.3 fortuna red 100.3 fortuna green 100.3 misty blue 120.3 Virginia silver.3 Virginia gold.3 Virginia men gold.

SMS Text: [5/6] .5 Virginia gold 120.3 Kent 100.5 dunhill red.5 merit blue .3 merit bronze .10 Capri pink .2 Capri green .3 Capri blue .5 lucky strike.5 camel non filter

SMS Text: [6/6] .3 benson premium .3 Newport red .30 Newport light .15 Newport light 100.270 short.1050 lon

52.    A sixth sequence of orders indicating the transmission of orders from the New York City buyer known as Bashar Ali to the H&H Defendants via Transporter Ammar Shamakh and North Carolina Retailer Mussa Hamza is illustrated below:

    a.    On January 23, 2017, at 3:48 hours Bashar Ali placed an order by four separate text messages with Transporter Ammar Shamakh:

SMS Text: [1/3] .600 np100.150 np.15 np lt.15 np lt 100.150 mlt.90 red .90 mlt 100.90 red 100.30 slv .30 menthol lt .5 menthol.5 medium 100.5  no 27.5 winston .10 kool.10

SMS Text: [2/3] . crush.7 salem bx.2 salem bx 100.2 salem lt 100.10 misty green 120.5 misty blue 120.5 capri pink.5 capri pink 120.5 cap blue 120.5 cap green.10 yellow.10

SMS Text: [3/3] . as blue .5 as orange .5 as celadon.5 as gold.5 as dark blue .2 merit yellow.2 merit blue .15 benson prem menthol.5 camel no filter .90 plt .60 plt 100..

     b.  On January 23, 2017, at 6:23 hours, Transporter Ammar Shamakh relayed Bashar's order, with minor variations increasing the quantities purchased, to North Carolina Mussa Hamza:

SMS Text: [1/3] .720 np100,210 np.15 np lt.15 np lt 100.150 np.90 red .90 mlt 100.90 red 100.30 slv .30 menthol lt .5 menthol.5 medium 100.5  no 27.5 winston .10 kool.10

SMS Text: [2/3] . crush.7 salem bx.2 salem bx 100.2 salem lt 100.10 misty green 120.5 misty blue 120.5 capri pink.5 capri pink 120.5 cap blue 120.5 cap green.10 yellow.10

SMS Text: [3/3] . as blue .5 as orange .5 as celadon.5 as gold.5 as dark blue .2 merit yellow.2 merit blue .15 benson prem menthol.5 camel no filter .90 plt .60 plt 100..

     c.  On January 23, 2017, at 7:04 hours, North Carolina Retailer Mussa Hamza relayed, with minor variations, Bashar's order, as received by Hamza from Ammar Shamakh, to H&H owner Amjed Hatu.

SMS Text: [1/3] .450 np100.120 np.15 np lt.15 np lt 100.30 mlt.90 mlt 100.90 red 100.30 slv .30 menthol lt .5 menthol.5 medium 100.5  no 27.10 crush.7 salem bx.2 salem bx

SMS Text: [2/3] . 100.2 salem lt 100.10 misty green 120.5 misty blue 120.5 capri pink.5 capri pink 120.5 cap blue 120.5 cap green.10 yellow.10 as blue .5 as orange .5 as

SMS Text: [3/3] .celadon.5 as gold.5 as dark blue .2 merit yellow.2 merit blue .15 benson prem menthol.5 camel no filter .90 plt .60 plt 10

53.    An seventh sequence of orders from a New York City buyer to the H&H Defendants via a North Carolina Retailer is illustrated below:

     a.  On January 23, 2017, at 6:52 hours U/M 1 placed an order by five separate text messages with Transporter Ammar Shamakh:

SMS Text: [1/5] .5 benson hagen menth bx. 10 mirt sliver menth 100 soft. 5 luky. 10 true blue bx. 10 vrgna slim menth sliver. 5 vrgna slim bx. 10 palmal 100 bx. 10 palmal

SMS Text: [2/5] . blue 100 bx. 5 mavrk 100. 5 mavrk menth lat 100. 5 mavrk menth 100. 5 misty blue 120. 15 amricn yelow. 5 amricn dark green. 5 amricn gold. 5 kool bx. 10

> SMS Text: [3/5] . winston. 15 caml lat. 15 caml crsh. 90 palment. 60 palment 100. 10 palment ultr. 5 palment menth lat. 210 mal lat. 75 mal lat 100. 90 mal. 30 mal 100. 6

> SMS Text: [4/5] .0 mal ultr. 10 mal menth lat. 20 mal menth. 15 mal menth 100. 10 mal 27. 10 mal black. 5 mal blue. 30 np lat. 15 np lat 100. 120 smal. 300 long. If u hav

> SMS Text: [5/5] .e 5 off long bring

     b.  On January 23, 2017, at 6:56 hours, Transporter Ammar Shamakh relayed to Mussa Hamza in five text messages the order placed by U/M 1:

> SMS Text: [1/5] .5 benson hagen menth bx. 10 mirt sliver menth 100 soft. 5 luky. 10 true blue bx. 10 vrgna slim menth sliver. 5 vrgna slim bx. 10 palmal 100 bx. 10 palmal

> SMS Text: [2/5] . blue 100 bx. 5 mavrk 100. 5 mavrk menth lat 100. 5 mavrk menth 100. 5 misty blue 120. 15 amricn yelow. 5 amricn dark green. 5 amricn gold. 5 kool bx. 10

> SMS Text: [3/5] . winston. 15 caml lat. 15 caml crsh. 90 palment. 60 palment 100. 10 palment ultr. 5 palment menth lat. 210 mal lat. 75 mal lat 100. 90 mal. 30 mal 100. 6

> SMS Text: [4/5] .0 mal ultr. 10 mal menth lat. 20 mal menth. 15 mal menth 100. 10 mal 27. 10 mal black. 5 mal blue. 30 np lat. 15 np lat 100. 150 smal. 390 long. If u hav

> SMS Text: [5/5] .e 5 off long bring

     c.  On January 23, 2017, at 6:56:37 hours, North Carolina Retailer Mussa Hamza relayed the nearly identical order to H&H owner Amjed Hatu:

> SMS Text: [1/5] .5 benson hagen menth bx. .10 mirt sliver menth 100 soft. .5 luky. .10 true blue bx. .10 vrgna slim menth sliver. .5 vrgna slim bx. .10 palmal 100 bx. .10

> SMS Text: [2/5] . palmal blue 100 bx. .5 mavrk 100. .5 mavrk menth lat 100. .5 mavrk menth 100. .5 misty blue 120. .15 amricn yelow. .5 amricn dark green. .5 amricn gold.

> SMS Text: [3/5] . .5 kool bx. .10 winston. .15 caml lat. .15 caml crsh. .90 palment. .60 palment 100. .10 palment ultr. .5 palment menth lat. .210 mal lat. .75 mal lat 10

> SMS Text: [4/5] .0. .90 mal. .30 mal 100. .60 mal ultr. .10 mal menth lat. .20 mal menth. .15 mal menth 100. .10 mal 27. .10 mal black. .5 mal blue. .30 np lat. .15 np la

> SMS Text: [5/5] .t 100. .150 smal. .390 long

    54.  The NYPD and its partner investigative agencies intercepted the Transporters' vehicles on several occasions, seizing thousands of cartons of cigarettes as well as thousands of dollars in cash. Prior to the arrest of many Moflehi Enterprise members, NYPD and other agencies involved in the investigation seized 6342.9 cartons of cigarettes, 19,920 counterfeit New York State and Connecticut tax stamps and $354,999 in cash.

55.     The coordination among various members of the Moflehi Enterprise, including the H&H Defendants and the North Carolina Retailers is evidenced in conversations among Enterprise members that followed one of the seizures from Transporter Ammar Shamakh by New York City Police Department ("NYPD") officers.

56.     On or about February 28, 2017, Transporter Ammar Shamakh telephoned North Carolina Retailer Akram Shamakh, reporting that Ammar Shamakh and a second Transporter, Maeen Alsaydi, had been stopped by NYPD as they were delivering an order to a customer in New York City.

57.     Ammar stated to Akram that the "merchandise" from both his (Ammar's) vehicle and that of Maeen Alsaydi had been seized, at a loss of almost $350,000 thousand, in "one shot."

58.     Ammar considered whether he should telephone "Mussa," plausibly a reference to North Carolina Retailer Mussa Hamza from whom Ammar frequently purchased cigarettes.

59.     On March 6, 2017, in a telephone conversation between H&H owners Amjed Hatu and his partner Shareef Hassan, Amjed stated that this week, "Mussa and Akram's guy," "got robbed on the highway," for 6000 cartons. "Mussa and Akram's guy" is a plausible reference to Ammar Shamakh, who had reported the "robbery" to Akram Shamakh in the above-described February 28, 2017 conversation.

60.     Hatu further stated on March 6, 2017, that Mussa told Hatu that "they," a likely reference to the two Transporters (Ammar Shamakh and Maeen Alsaydi) had been "hit" for $90,000 six months previously, in which the same two "robbers" participated. This was plausibly a reference to a seizure made by the NYPD on November 3, 2016, of approximately $100,000 United States currency from a motor vehicle operated by Ammar Shamakh being driven on

White Plains Road in the Bronx.  Wiretap intercepts establish that these funds had been provided to Ammar Shamakh in exchange for "untaxed" cigarettes transported from North Carolina.

61.     Hatu and Hassan further discussed in the March 6, 2017 conversation that the loss of income from the seized product would make things difficult for them, and agreed that "they," – again a likely reference to the Transporters – "probably need to get a new car and find a different way to go. They have to."

62.     On the day of the June 8, 2017 arrest of many Enterprise members, investigators seized 2,345 cartons of cigarettes, 86,676 tax stamps estimated at $5 million, $281,344 in cash, approximately $45,000 in rare coins and jewelry, and other property.

### Allegations Related to the CCTA

63.     The CCTA, 18 U.S.C. §§ 2341-2346, was enacted to assist state and local governments in enforcing their tobacco laws, and thus provides for civil enforcement actions by state and local governments. 18 U.S.C. § 2346. The CCTA makes it a felony punishable by up to five years' imprisonment for any person, with exceptions not relevant here, to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes, defined as more than 10,000 cigarettes that bear no evidence of the payment of applicable cigarette taxes to the State or locality in which the cigarettes are found, if that jurisdiction requires stamps to be placed on packages or other containers of cigarettes to evidence tax payments. 18 U.S.C. §§ 2341(2); 2342.

64.     New York State and the City each impose an excise tax on cigarettes possessed for sale or use in the City or State.  The two jurisdictions require the use of a joint City-State tax stamp to evidence the payment of cigarette taxes. N.Y. Tax L. §§ 471, 471-a; Ad. Code § 11-1302.

65.     None of the cigarettes shipped, transported, and distributed by the H&H Defendants were affixed with the joint New York State/New York City tax stamp.  Nor could they have been; only licensed New York "stamping agents" are permitted to affix tax stamps. None of the cigarettes brought into the State by the Moflehi were delivered to a licensed stamping agent.

66.     The cigarettes shipped, transported and distributed by the H&H Defendants are contraband cigarettes within the meaning of the CCTA because (i) there is a State and a City cigarette tax applicable to the cigarettes; (ii) New York State and City both require a stamp to be placed on packages of cigarettes to evidence payment of cigarette taxes; (iii) the defendants were responsible for transporting, selling and distributing more than 10,000 cigarettes that were found within the State and the City without tax stamps; and (iv) defendants are not within any of the categories of persons entitled pursuant to 18 U.S.C. § 2341(2) to possess unstamped cigarettes.

67.     The H&H Defendants knew that the cigarettes that they sold to the Moflehi Enterprise were to be transported to New York City and State for sale and distribution without tax stamps being affixed or payment of applicable cigarette taxes.

### Allegations Related to RICO

### The Predicate Offenses

68.     The RICO statute, 18 U.S.C. § 1961 *et seq.*, makes it unlawful for any person employed by or associated with any enterprise engaged in or affecting interstate commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

69.     "Racketeering activity" includes any act indictable under 18 U.S.C. § 2341 *et seq.*, trafficking in contraband cigarettes in violation of the CCTA. *See* 18 U.S.C. § 1961(1).  A

CCTA violation is accordingly a RICO "predicate offense." Violation of the CCTA constitutes "racketeering activity" within the meaning of the RICO statute.

70.     At all times relevant to this complaint, the Moflehi Enterprise has been an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The Moflehi Enterprise engaged in, and its activities affected, interstate commerce. The Moflehi Enterprise constituted an ongoing organization whose employees and members functioned as a continuing unit for the common purpose of achieving the objectives of the Enterprise, which included earning money through the distribution of unstamped cigarettes in New York and elsewhere.

71.     At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers have been members of the Moflehi Enterprise.

### The Purposes, Methods and Means of the Enterprise

72.     The principal purpose of the Moflehi Enterprise has been to generate money for its members by engaging in the shipment, distribution, sale and possession of contraband cigarettes. The H&H Defendants and the North Carolina Retailers, as members of the Enterprise, sought to and did participate in achieving the purpose of the Enterprise through various legal and illegal activities.

73.     The H&H Defendants received orders for cigarettes from the North Carolina Retailers and filled those orders knowing that the cigarettes, which were not affixed with joint New York State/New York City tax stamps, would be immediately transferred to members of the Moflehi Enterprise for transport to and sale in New York. The H&H Defendants took all necessary steps to permit the Moflehi Enterprise to succeed in the joint purpose of earning money through the distribution of contraband cigarettes.

74.     The North Carolina Retailers received orders for cigarettes from members of the Moflehi Enterprise, filled orders for cigarettes for the Moflehi Enterprise, and sold cigarettes to

the Moflehi Enterprise knowing that the cigarettes would be immediately transported to and sold in New York. The North Carolina Retailers took all necessary steps to permit the Moflehi Enterprise to succeed in its purpose of earning money through the distribution of contraband cigarettes.

75.    At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers participated in the conduct of the affairs of the Moflehi Enterprise by selling, shipping and distributing contraband cigarettes into New York City and State, or arranging therefor.

76.    At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers conducted the affairs of the Moflehi Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of multiple and continuing instances of contraband cigarette trafficking in violation of 18 U.S.C. § 2341 *et seq.*

## Racketeering Acts

77.    At all times relevant to this complaint, the H&H Defendants knowingly and intentionally sold, shipped and distributed contraband cigarettes in New York, namely, more than 10,000 cigarettes lacking joint New York State/New York City tax stamps, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*  Each transaction or aggregate of transactions involving 10,000 cigarettes constitutes a separate violation of the CCTA and hence an act of racketeering as defined by the RICO statute. The H&H Defendants committed more than two racketeering acts during the ten years preceding the filing of this complaint.

78.     The foregoing racketeering acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961, in that they consist of two or more acts of racketeering activity having a common purpose within a ten-year period.

### Role of the H&H Defendants

79.     At all times relevant to this complaint, the H&H Defendants participated in the management and operation of the Moflehi Enterprise by, among other things:

a.  Engaging in the long-term planning and day-to-day activities required to sell, ship and distribute contraband cigarettes;

b.  Arranging for the sale, shipment, transport and distribution of contraband cigarettes into New York City;

c.  Selling North Carolina-taxed cigarettes to persons whom the H&H Defendants knew and intended would transport the cigarettes to New York City and State for distribution;

d.  Receiving orders for North Carolina-taxed cigarettes from the North Carolina Retailers, and arranging for the cigarettes to be transported to the North Carolina Retailers with the knowledge that the cigarettes would be transferred to the Transporters for transport to New York;

e.  Employing and instructing other individuals to engage in all of the above activities.

80.     At all times relevant to this complaint, the North Carolina Retailers participated in the management and operation of the Moflehi Enterprise by, among other things:

a.  Engaging in the long-term planning and day-to-day activities required to sell, ship and distribute contraband cigarettes;

b.  Arranging for the sale, shipment, transport and distribution of contraband cigarettes into New York City;

c.  Selling North Carolina-taxed cigarettes to persons whom the North Carolina Retailers knew and intended would transport the cigarettes to New York City and State for distribution.

- 28 -

d. Receiving orders for North Carolina-taxed cigarettes from members of the Moflehi Enterprise, ordering the cigarettes from the H&H Defendants and arranging for the cigarettes to be delivered to the Moflehi Enterprise with the knowledge that the cigarettes would be transferred to the Transporters for distribution in New York.

e. Employing and instructing other individuals to engage in all of the above activities.

### Allegations Related to Conspiracy to Violate RICO

81. At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers conspired with other members of the Moflehi Enterprise to violate the provisions of 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), by agreeing to further endeavors of the Moflehi Enterprise that, when completed, constituted contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. § 2341 *et seq*.

82. At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers agreed to a plan with other members of the Moflehi Enterprise whereby H&H would operate as a tobacco distributor in North Carolina, obtain large quantities of North Carolina-taxed cigarettes, and sell the cigarettes to the North Carolina Retailers, whom the H&H Defendants knew and intended would in turn sell the cigarettes to persons who would transport the cigarettes to New York City for re-sale without affixing New York State or City tax stamps.

83. At all times relevant to this complaint, the North Carolina Retailers and the H&H Defendants agreed to a plan with other members of the Moflehi Enterprise whereby the North Carolina Retailers would obtain large quantities of North Carolina-taxed cigarettes from the H&H Defendants and sell the cigarettes to members of the Moflehi Enterprise, whom the North Carolina Retailers knew would transport the cigarettes to New York City for re-sale without affixing New York State or City tax stamps.

84.     The H&H Defendants and the North Carolina Retailers each recognized that an essential element of the plan consisted of multiple violations of the CCTA, 18 U.S.C. § 2341 *et seq*. The H&H Defendants and the North Carolina Retailers agreed that certain members of the Moflehi Enterprise would commit CCTA violations while other Enterprise members would engage in conduct intended to support and facilitate those violations of the CCTA.

85.     At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers, together with other members of the Moflehi Enterprise, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Moflehi Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1), (5).

86.     The pattern of racketeering activity through which the H&H Defendants and the North Carolina Retailers agreed to conduct the affairs of the Moflehi Enterprise consisted of acts of contraband cigarette trafficking into New York City and State. The H&H Defendants and the North Carolina Retailers each agreed that some conspirators would commit at least two acts of racketeering in the conduct of the affairs of the Moflehi Enterprise.

**Allegations Related to the PACT Act**

87.     Pursuant to PACT Act, 15 U.S.C. § 375(4), a "consumer" is any person that is not lawfully dealing in tobacco products in the jurisdiction in which the person does business.

88.     Pursuant to the PACT Act, 15 U.S.C. § 375(5), a "delivery sale" is any sale of cigarettes to a "consumer" in which the seller is not in the physical presence of the consumer when the order is placed, or the seller is not in the physical presence of the consumer when the

consumer obtains possession of the cigarettes, or the cigarettes are delivered to the consumer by any method of remote delivery, such as common carrier. *See* 15 U.S.C. § 375(5).

89.     The H&H Defendants' and the North Carolina Retailers' sales of cigarettes to the Moflehi Enterprise were delivery sales to "consumers" within the meaning of the PACT Act, 15 U.S.C. § 375(4), because the members of the Moflehi Enterprise, the purchasers of the cigarettes, were not licensed by New York State or City to deal in tobacco products and were therefore not "lawfully-operating cigarette manufacturers, distributors, wholesalers or retailers."

90.     The H&H Defendants' and the North Carolina Retailers' distribution of cigarettes to the Moflehi Enterprise were "delivery sales" within the meaning of the PACT Act, 15 U.S.C. § 375(5), because the H&H Defendants and the North Carolina Retailers were not in the physical presence of the Moflehi Enterprise members when the orders were placed, when the orders were delivered, or were delivered to the Enterprise by remote delivery. *See* 15 U.S.C. § 375(5).

91.     A "delivery seller" is a person who makes a delivery sale. 15 U.S.C. § 375(6). The H&H Defendants and the North Carolina Retailers are "delivery sellers" because they engaged in remote transactions with members of the Moflehi Enterprise.

92.     The delivery sales by the H&H Defendants were made in interstate commerce within the meaning of the PACT Act, because the cigarettes were sent from North Carolina to New York. *See* 15 U.S.C. §§ 375.

93.     Under the PACT Act, any person that sells, transfers, or ships for profit cigarettes in interstate commerce into New York State in a delivery sale must file with the New York State Department of Taxation and Finance specified information identifying the seller and must also file, not later than the 10th day of each calendar month, a memorandum containing specified information concerning each and every shipment of cigarettes made during the previous calendar

month into New York State. Such persons must also file copies of the memorandum concerning any and all cigarette shipments into New York State with the New York City Department of Finance and the Corporation Counsel of the City of New York. See 15 U.S.C. § 376.

94.    In addition to the above reporting requirements, the PACT Act requires that any delivery seller making a delivery sale into New York City and/or State:

    a.  Comply with all laws governing the sale of cigarettes in New York City and/or State. 15 U.S.C. § 376a(a)(3);

    b.  Make certain that all applicable cigarette taxes have been paid to each jurisdiction and that the required tax stamps have been affixed before the delivery sale is made. 15 U.S.C. §§ 376a(a)(4), (d);

    c.  Assure that the weight of cigarettes sold, delivered, or caused to be delivered in a single sale or delivery does not exceed ten pounds. 15 U.S.C. §§ 376a (a), (b)(3);

    d.  Place specified notices on the outside of the packages involved in the delivery sale. 15 U.S.C. §§ 376a (a), (b)(1), (2); and

    e.  Deliver the cigarettes by a method that requires the person to whom the delivery is made to provide age verification to the delivery service.  15 U.S.C. §§ 376a (a), 376a (b)(4).

95.    None of the delivery sales made by the H&H Defendants and/or the North Carolina Retailers were reported to New York State or to the New York City Department of Finance or to the Office of the Corporation Counsel of the City of New York in a memorandum describing the particulars of the sales.

96.    None of the delivery sales made by the H&H Defendants and/or the North Carolina Retailers were of cigarettes on which taxes had been paid or to which tax stamps had been affixed.

97.     New York State and City requires persons who sell cigarettes in New York to obtain a license.  None of the H&H Defendants and/or the North Carolina Retailers are licensed to sell cigarettes in New York.

98.     Neither the H&H Defendants nor the North Carolina Retailers used a method of delivery that required the age of the buyer to be verified upon delivery.

### Allegations Related to Violation of N.Y. PHL § 1399-ll

99.     N.Y. PHL § 1399-ll(1) provides that, in New York State, cigarettes may be shipped only to (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

100.    No associate of the Moflehi Enterprise was (a) a licensed cigarette tax agent, licensed wholesale dealer, or registered retail dealer, (b) an export warehouse proprietor or customs bonded warehouse operator, or (c) an agent of the federal or state government.

101.    The H&H Defendants and North Carolina Retailers knowingly distributed into New York City and State thousands of cartons of cigarettes to persons that the H&H Defendants and North Carolina Retailers knew were not (a) licensed cigarette tax agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

102.    By knowingly transporting cigarettes to persons in New York City and State other than those designated as the permissible recipients of cigarette deliveries set forth in N.Y. PHL § 1399-ll, the H&H and North Carolina Retailers violated N.Y. PHL § 1399-ll.

### FIRST CLAIM FOR RELIEF

### Violation of the Contraband Cigarette Trafficking Act

103.    The City realleges paragraphs 1-102 above as if fully set forth herein.

104.   Pursuant to the CCTA, 18 U.S.C. § 2346, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA and to obtain any other appropriate forms of relief from such violations, including civil penalties, equitable remedies, and damages.

105.   At all times relevant to this complaint, the H&H Defendants and the North Carolina Retailers knowingly shipped, transported, sold and distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in that the H&H Defendants and the North Carolina Retailers engaged in such activities with more than 10,000 cigarettes that bore neither the New York State tax stamp nor the joint New York State/New York City tax stamp and that were shipped, transported, sold and distributed to persons located in New York City and State.

106.   As a direct result of the foregoing violations of the CCTA by the H&H Defendants and the North Carolina Retailers, the City has suffered and continues to suffer damages.

107.   The H&H Defendants will continue to violate the CCTA unless enjoined.

### SECOND CLAIM FOR RELIEF

#### Violation of 18 U.S.C. § 1962(c)

108.   The City realleges paragraphs 1-102 as if fully set forth herein.

109.   New York City is a "person" as defined in 18 U.S.C. § 1961(3).

110.   The H&H Defendants and the North Carolina Retailers are each "persons" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

111.   The Moflehi Enterprise is an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. §§ 1962(c).  The Moflehi Enterprise engages in activities affecting interstate commerce and did so at all times relevant to the complaint.

112.    The H&H Defendants and the North Carolina Retailers are each members of the Moflehi Enterprise. Each H&H Defendant and each North Carolina Retailer conducts or participates in the management and operation of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), namely, multiple and repeated acts of contraband cigarette trafficking, in violation of 18 U.S.C. §§ 2341 *et seq.*

113.    The acts of contraband cigarette trafficking engaged in by the H&H Defendants constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), because the acts are related to one another and are continuous. The acts are connected to one another as part of a plan to accomplish a uniform purpose, which is the making of money from the distribution of contraband cigarettes. The repeated nature of the conduct and the threat of similar conduct occurring in the future make the acts continuous.

114.    New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) by H&H Defendants and the North Carolina Retailers.

### THIRD CLAIM FOR RELIEF

#### Violation of § 1962(d)

115.    The City realleges paragraphs 1-102 as if fully set forth herein.

116.    New York City is a "person" as defined in 18 U.S.C. § 1961(3).

117.    The H&H Defendants and the North Carolina Retailers are each a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(d).

118.    The Moflehi Enterprise is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); it engages in and its activities have an effect on interstate commerce.

119.     The H&H Defendants and the North Carolina Retailers conspired with one another and with other members of the Moflehi Enterprise, within the meaning of 18 U.S.C. § 1962(d), to violate 18 U.S.C. § 1962(c) in that the conspirators agreed among themselves to conduct the affairs of the Moflehi Enterprise through acts that, when completed, would satisfy all of the elements of a predicate offense, to wit, contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341 *et seq.*

120.     With knowledge that the Moflehi Enterprise engaged in multiple and repeated acts of contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341, *et seq.*, the H&H Defendants and the North Carolina Retailers each agreed that the affairs of the Moflehi Enterprise would be conducted in a manner that would facilitate these acts and lead to the success of the scheme to traffic contraband cigarettes into New York City.

121.     The scheme to traffic contraband cigarettes into New York City constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).  The predicate acts are both related and continuous.  The acts are connected to one another as part of a scheme to accomplish a uniform purpose, which is the making of a profit from the sale of contraband cigarettes in New York City.  The repeated nature of the conduct during the period of the scheme and the threat of similar conduct occurring in the future make the acts continuous.

122.     New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the H&H Defendants' violation of 18 U.S.C. § 1962(d).

### FOURTH CLAIM FOR RELIEF

#### Violation of the PACT Act

123.     The City repeats and realleges paragraphs 1-102 as if fully set forth herein.

124.     The H&H Defendants are "delivery sellers" within the meaning of the PACT Act.

125.    Members of the Moflehi Enterprise are "consumers" within the meaning of the PACT Act.

126.    Pursuant to the PACT Act, 15 U.S.C. § 378, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the PACT Act and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement and damages.

127.    As to the deliveries of cigarettes to the Moflehi Enterprise, neither the H&H Defendants nor the North Carolina Retailers (i) reported the sales to New York City in a memorandum describing the particulars of the sales; and (ii) did not comply with the age-verification requirements of the PACT Act.

128.    The H&H Defendants' and the North Carolina Retailers' delivery sales to the Moflehi Enterprise were unlawful within the meaning of the PACT Act.

129.    Unless enjoined, the H&H Defendants will continue to make sales to the Moflehi Enterprise without complying with the PACT Act.

130.    As a direct result of the H&H Defendants' and the North Carolina Retailers' sales to the Moflehi Enterprise in violation of the PACT Act, the City has suffered and continues to suffer damages.

### FIFTH CLAIM FOR RELIEF

#### Violation of N.Y. Pub. Hlth. L. § 1399-*ll*

131.    The City repeats and realleges paragraphs 1-102 as if fully set forth herein.

132.    The H&H Defendants and the North Carolina Retailers knowingly sold and/or delivered into New York City and State thousands of cartons of cigarettes to persons that the H&H Defendants and the North Carolina Retailers knew were not (a) licensed cigarette tax

agents, licensed wholesale dealers, or registered retail dealers, (b) export warehouse proprietors or customs bonded warehouse operators, or (c) agents of the federal or state government.

133.     By knowingly selling and/or transporting cigarettes to persons in New York City and State other than those designated as permissible recipients of cigarette deliveries by N.Y. PHL § 1399-ll, the H&H Defendants and the North Carolina Retailers violated N.Y. PHL § 1399-ll.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against defendants as follows:

a.   On the First Claim For Relief, requiring the H&H Defendants and the North Carolina Retailers to pay the City (i) money in an amount equal to (i) the amount of the City tax imposed on the cigarettes distributed into the City by the H&H Defendants and the North Carolina Retailers in violation of the CCTA, 18 U.S.C. § 2341 *et seq.* and (ii) civil penalties and (iii) permanently enjoining the H&H Defendants and the North Carolina Retailers from violating the CCTA, 18 U.S.C. § 2341 *et seq.* by shipping unstamped cigarettes into New York;

b.   On the Second Claim For Relief, pursuant to the RICO statute, 18 U.S.C. § 1962(c) *et seq.*, requiring the H&H Defendants and the North Carolina Retailers to pay the City three times the amount of the City's losses caused by the defendants' violation of the CCTA, 18 U.S.C. § 2341 *et seq.*;

c.   On the Third Claim For Relief, pursuant to the RICO statute, 18 U.S.C. § 1962(d), requiring the H&H Defendants and the North Carolina Retailers to pay the City three times the amount of the City's losses caused by the defendants' violation of the CCTA, 18 U.S.C. § 2341 *et seq.*;

d.   On the Fourth Claim For Relief, (i) requiring the H&H Defendants and the North Carolina Retailers to pay the City money damages in an amount equal to (i) the amount of the City tax imposed on the cigarettes distributed into the City by the H&H Defendants' and the North Carolina Retailers in violation of the PACT Act, 15 U.S.C. § 375 *et seq.* and (ii) the civil penalties provided for by the PACT Act, 15 U.S.C. § 375 *et seq.* and (iii) permanently enjoining the H&H Defendants and the North Carolina Retailers from violating the PACT Act, 15 U.S.C. § 375 *et seq.*

    *e.*  On the Fifth Claim For Relief, (i) requiring the H&H Defendants and the North Carolina Retailers to pay the City the amount of the City tax imposed on the cigarettes distributed into the City by the H&H Defendants and the North Carolina Retailers in violation of N.Y. Pub. Hlth. L. § 1399-*ll*; and (ii) awarding the City penalties as provided by N.Y. Pub. Hlth. L. § 1399-ll; and

    f.  Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
       January 31, 2018

                     ZACHARY W. CARTER
                     Corporation Counsel of the
                       City of New York
                     Attorney for Plaintiff the City of New York
                     100 Church Street, Room 20-99
                     New York, New York 10007
                     (212) 356-2032

          By:   _____
                     Eric Proshansky (EP 1777)
                     Assistant Corporation Counsel